WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roy Warden,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Richard Miranda, et al.,<br><br>　　　　　　　Defendants. | No. CV 14-2050 TUC DCB<br><br>**ORDER** |

Defendants' Motion to Dismiss is pending before the Court, pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff, *pro se*, opposes the motion. Defendants have replied to Plaintiff's opposition. The Court denies the Motion to Dismiss.

## I. BACKGROUND

Roy Warden sues Defendants for declaratory relief and compensatory and exemplary damages for intentional and negligent violations of the First Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985. Plaintiff complains he was refused access to Armory Park on May 1st 2012, at a permitted rally of the Tucson May 1st Coalition (May 1st Coalition), which is comprised of labor groups, immigration activist organizations, and other similar groups. The May 1st Coalition advocates for legalization of undocumented immigrants from Mexico, a fast and affordable path to residency for Mexican nationals, full labor and education rights regardless of immigration status, and associated causes.

Plaintiff sues officials including the Tucson City Manager Miranda, Tucson City

Attorney Rankin, Assistant Tucson City Attorney Judge, Tucson Parks and Recreation Director Grey, Southwest District Administrator of Parks and Recreation Ochoa, and the City of Tucson itself. Plaintiff sues Tucson Police Department (TPD) law enforcement officers including Chief Villaseñor, Captain McCarthy, Lieutenant Sayre, and Lieutenant Lopez. Plaintiff sues the non-governmental party, the May 1st Coalition. He also names 25 Doe Defendants and unidentified Defendants, the May 1st Coalition permit holder and two unidentified political activists.[1]

Plaintiff alleges in Count One that Defendants violated his freedom of speech by preventing his entry into Armory Park on May 1, 2012, pursuant to an exclusive use permit issued to the May 1st Coalition. That permit, issued under TCC § 21-4(a),(b)(6) and authorized by the City Defendants, allegedly allowed the holders to exclude the Plaintiff from Armory Park where he wanted to speak in opposition to the interests of the May 1st Coalition. TCC § 21-3(7)(4) makes it unlawful for any person to interfere with persons participating in any activity under a permit. Plaintiff claims the exclusive use permits issued by the City Defendants and enforced by the TPD Defendants, pursuant to these ordinances, violate the First Amendment.

In Count One Plaintiff alleges that Defendant Villaseñor failed to provide TPD officers with proper training and that their enforcement of the permit violates the First Amendment. Plaintiff withdraws this claim in his Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss. (Response (Resp.) (Doc. 22) at 12, ¶25).

Plaintiff alleges in Count One that the City of Tucson violated his First Amendment rights by authorizing an exclusive use permit which can be used to exclude an individual from a permitted event. The Defendants seek to dismiss the City of Tucson

---

[1] The Court dismisses Defendants "the Unidentified Exclusive Use Permit Holder, the Tall Unidentified Political Activist with Cap and the Short Unidentified Political Activist. *See* Order (Doc. 24) (explaining unnamed and unidentified defendants are mere placeholder defendants, not subject to service until properly identified and named). Service by publication on Defendant the May 1st Coalition did not effect service on any unnamed defendants. To be clear, there is no distinction between unnamed and unidentified defendants. The Court allows placeholder Doe Defendants until the close of discovery, and then --they too will be dismissed. In other words, Plaintiff has until the close of discovery to identify and name all Defendants.

- 2 -

1  as a Defendant, under *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658,
2  690-91 (1978), which requires the Plaintiff to establish that "'the local government had a
3  deliberate policy, custom, or practice that was the moving force behind the constitutional
4  violation suffered.'"  (Motion to Dismiss (MD) (Doc. 13) at 12-13) (quoting *Hernandez*
5  *v. Cnty of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)).  Local governing bodies can be sued
6  under §1983 where the alleged constitutional violation is committed by that body's
7  officers when they implement a policy, ordinance, or regulation propagated by that body.
8  *Monell*, 436 U.S. at 658. This is precisely what Plaintiff alleges here: that the City of
9  Tucson has adopted unconstitutional ordinances.

10  Plaintiff notes that "local governments… may be sued for constitutional
11  deprivations visited pursuant to governmental 'custom' even though such a custom has
12  not received formal approval through the body's official decision making channels." *Id.* at
13  690-91, (First Amended Complaint (FAC) (Doc. 6) ¶19).  In this way "a municipal policy
14  'may be inferred from widespread practices or evidence of repeated constitutional
15  violations for which the errant municipal officers were not discharged or reprimanded.'"
16  *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005).  Plaintiff alleges instances
17  in 2008, 2009, 2010, and 2012, of unlawful issuance of exclusive use permits, under
18  which he was unlawfully excluded from permitted May 1st Coalition events.  (FAC (Doc.
19  6) ¶23-30).  While these allegations may be barred by the statute of limitations to support
20  independent causes of action, they are relevant to Plaintiff's claim against the City of
21  Tucson under *Monell*.  Allegations of repeated violations year after year, taken in the
22  light most favorable to plaintiff, show a custom or widespread practice by the City of
23  Tucson.

24  The Court denies the Defendants' request to strike these paragraphs from the FAC.
25  (Reply (Doc. 23) at 2).  Defendants did not raise the statute of limitations challenge in the
26  Motion to Dismiss, but waited to raise it in the Reply.  The Court will not rule on the
27  time-bar defense without affording Plaintiff notice and an opportunity to respond.  Herbst
28  v. Cook, 260 F.3d 1039 (9th Cir. 2001).  To be clear, the Court does not read the FAC to

allege independent causes of action arising in 2008, 2009, and 2010. *See* (FAC, Count I) (alleging a cause of action arising May 1, 2012); Counts II and III (same)).

The Court finds that the Plaintiff has alleged facts to name the City of Tucson as a Defendant in Count One.

Count Two alleges a first amendment retaliation claim: that Defendants retaliated by inhibiting Plaintiff's free speech rights because he has conducted investigations and exposed the City of Tucson's open border policy and cronyism. Count Three alleges a conspiracy claim wherein Defendants formulated a plan to deny Plaintiff access to Armory Park and carried out that plan.

## II. Standard of Review

The Defendants respond that all counts fail to state a claim upon which relief can be granted. The standard for review for a 12(b)(6) motion was announced in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (MD (Doc. 13) at 4). At the pleading stage, the plaintiff must allege enough facts, if taken as true, to suggest that a claim exists. This does not impose a probability requirement at the pleading state, it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence to support the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). To survive a 12(b)(6) motion, the "factual allegations [in the complaint] must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Id*

The Ninth Circuit notes two conditions must be met when considering a motion to dismiss for failure to state claim: (1) allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively, and (2) the factual allegations must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. (MD (Doc. 13) at 5 (citing *Starr v. Baca*, 652 F.3d

1202, 1216 (9th Cir. 2011)).

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. *Smith v. Pacific Prop. and Dev. Corp.*, 358 F.3d 1097, 1106 (9th Cir. 2004); *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994). However, Courts will not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Furthermore, Courts will not assume that defendants have violated additional laws, or that plaintiffs can prove exogenous facts, when the appropriate allegations are absent. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In short, at the pleading stage dismissal is appropriate if the facts alleged do not state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility is not attained if the facts are merely consistent with Plaintiff's claims. *Twombly*, 550 U.S. at 545, 557. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### III. DISCUSSION

In their Motion to Dismiss, the Defendants argue that Plaintiff's FAC lacks a cognizable legal theory. Defendants seek to dismiss Count One because as a matter of law an exclusive use permit holder can deny entry to protesters wishing to enter the permitted area and to eject protestors after they have entered. Defendants argue that because Plaintiff was excluded from the Park by the permit holder, the May 1st Coalition, there is no affirmative link between the alleged first amendment violation and the

Defendants' conduct in authorizing the exclusive use permit.

Defendants seek to dismiss Count Two for First Amendment retaliation because Plaintiff fails to allege any causal connection between Plaintiff's activities to expose the City's alleged open border policy and cronyism and Plaintiff's exclusion from Armory Park on May 1st, 2012. Defendants seek to dismiss Count Three because he does not allege any racial or class-based invidiously discriminatory animus for the conspirators' actions, does not define the scope of any conspiracy, what role the conspirators had, and when or how the conspiracy operated, and the factual allegations of Plaintiff's complaint do not allow the Court to draw the reasonable inference of a conspiracy.

### A. Count One: Plaintiff's *Gathright* Challenge

Plaintiff alleges in the FAC and in his Response that the Tucson City Code (TCC) § 21-4(a),(b)(6) and TCC § 21-3(7)(4) violate the First Amendment right of free speech. Plaintiff relies primarily on a letter written by Defendant, Tucson City Attorney Mike Rankin, dated April 12, 2006, which states that *Gathright v. City of Portland*, 439 F.3d 573 (9th Cir 2006) "preclude[s] a municipality from evicting certain attendees from an event open to the public in a public forum on the grounds that the person's speech is contrary to that of the organizers of the event." (FAC (Doc. 6) Ex. 1: letter.)

In *Gathright*, the plaintiff sued the City of Portland alleging that his free speech rights were violated by a city ordinance prohibiting any person from unreasonably interfering with a permittee's use of a public park. On multiple occasions, Portland police officers forced Gathright, a preacher, to leave the open events he attended because Portland police enforced the right of permit holders sponsoring an event to evict any member of the public who espoused a message contrary to the permit holder. *Gathright*, 439 F.3d 573 at 575. The Ninth Circuit Court of Appeals applied the reasonable time, place, and manner test for speech restrictions in a public forum established in *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989), and affirmed the district court's conclusion that the City infringed Gathright's First Amendment rights. The district court had concluded that Portland's policy was not narrowly tailored to serve what the court

1 acknowledged to be the City's legitimate interest in protecting the free speech rights of
2 permittees. Solely for the purpose of the appeal, the appellate court accepted that the
3 policy was content neutral and had a significant interest in "protecting the free speech
4 rights of people and organizations who have obtained permits to use public land for
5 events open to the public." *Gathright*, 439 F.3d at 577; *see also Gerritsen v. City of Los*
6 *Angeles*, 994 F.2d 570, 577 (9th Cir. 1993) (explaining First Amendment analysis
7 requires court to evaluate content neutrality, narrow tailoring, and alternative channels of
8 communication).

9 The City of Portland relied heavily on *Hurley v. Irish-Am. Gay, Lesbian and*
10 *Bisexual Group of Boston*, 515 U.S. 557 (1995) and *Sistrunk v. City of Strongsville*, 99
11 F.3d 194 (6th Cir. 1996) and argued that private persons who use City parks under
12 permits possess a First Amendment right to control the message delivered at their events.
13 The court agreed that permittees have the constitutional right to determine the content of
14 speech that will be expressed at their event, but cautioned that this right is limited to
15 limiting participants in the event, not individuals who are merely present at the event.
16 *Gathright*, 439 F.3d at 577 (citing *Gathright v. City of Portland*, 315 F.Supp.2d 1099,
17 1103 (Or. 2004)). The court distinguished *Hurley* and *Sistrunk*, where including a
18 contrary message would have changed the organizer's message, from *Gathright* where
19 there was no danger that any member of the public would attribute the dissenter's
20 message to the permittee. *Gathright*, 315 F. Supp. 2d at 1104.

21 For citizens like Gathright, the public park space remains a traditional public
22 forum, with permittees having a right to conduct their events free from unlawful
23 disruptive interference. The ordinance in *Gathright* made it "unlawful for any person
24 unreasonably to interfere with a permittee's use of a Park." Portland allowed a permittee
25 to order a person to leave an open public event when that person "unreasonably"
26 interferes with the permittee's use of the licensed space. The court considered Portland's
27 ordinances to be "'far too broad to not sweep into its reach any protected speech which
28 any permittee or police officer concludes might be unreasonable.'" *Gathright*, 439 F.3d

at 579-80 (quoting *City of Portland v. Lee,* No. 9907-46965 (Nov. 22, 1999)).  The court in *Gathright* held that the policy of allowing permittees "unfettered discretion to exclude private citizens on any or no basis is not narrowly tailored to the City's legitimate interest in protecting its permittees' right." *Gathright*, 439 F.3d at 577 (citing *Ward*, 491 U.S. at 798–800).

The court criticized the Portland ordinance because it provided no guidance as to what constituted a lawful reason for a permittee to eject an attendee based on that attendee's speech.  Portland did nothing to ensure that individuals were ejected solely because their speech was disruptive.  Under Portland's policy a permittee could eject someone who displayed a message with which the permittee disagreed.  Under this enforcement scheme the police were given no tools with which to evaluate whether a party may be excluded from an event.  The court held that it cannot be left up to a permittee to arbitrarily determine whether conduct is disruptive.  The court found no guidance in Portland's exclusive use permit ordinance, nor in the interference ordinance, "as to what constitutes disruptive behavior that would entitle an event permit holder to lawfully arrest or exclude plaintiff." *Gathright*, 315 F. Supp. 2d at 1105.

In 2008, the Ninth Circuit followed *Gathright* in a case where a police officer removed a political volunteer from a reserved public space following a complaint from the permit holder.  The court stated: "As in *Gathright*, we accept for purposes of this appeal, without deciding, that Defendants' actions on Thursday were content neutral and that protecting the rights of permittees is a significant governmental interest. But, again as in *Gathright*, we hold that Defendants' actions were not narrowly tailored to the government's interest in protecting the permittee's rights… *Defendants' conduct resulting in a complete exclusion of Plaintiff [] for no reason other than the asserted right of the permittees to exclude anyone expressing a political message, violated the First Amendment.* We therefore do not reach the question whether ample alternative channels of communication existed." *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 899 (9th Cir. 2008) (emphasis added).

- 8 -

1    In the case at hand, Plaintiff challenges two Tucson City ordinances: § 21-4(a),(b)(6), (FAC (Doc. 6) ¶ 23), and § 21-3(7)(4), (Resp. (Doc. 22) at 1 ¶2). The Court gives Plaintiff leave to amend his FAC to include § 21-3(7)(4). Arguably, these ordinances must be reviewed together, because the first outlines the City's policy for issuing exclusive use permits and the second outlines the City's policy prohibiting interference with permittees. The ordinances are as follows:

> Sec. 21-4. Permits, licenses and reservations.
>
> (a)   Permit. A person seeking issuance of a permit, license or reservation for use of a park area or facility shall make such request in writing to the director/district administrator. The request shall state the park name, date and time of use and all information pertaining to the proposed use of the park facility.
>
> (b)   Issuance. A permit, license or reservation for use shall be obtained from the director/district administrator by persons conducting, operating, presenting or managing any of the following activities:
>
> (6)   The reservation of any park facilities for a certain person or group of persons to the exclusion of others.
>
> Sec. 21-3(7). Relating to miscellaneous activities. No person in a park shall:
>
> (4)   Interfere with permittees. Disturb or interfere unreasonably with any person or party occupying any area, or participating in any activity, under the authority of a permit license or reservation.

When reviewed together, the City's ordinances describe a policy wherein a special permit holder may exclude those who disturb, or interfere with, the permittee.

As noted by Defendants, Plaintiff must allege facts reflecting that these Defendants caused his injury and caused the alleged violation of his First Amendment rights. (MD (Doc. 13) at 8) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976)). In other words, Plaintiff must allege facts reflecting an affirmative link between the alleged constitutional violation and the Defendants' authorization of the exclusive use permit to the May 1st Coalition, as well as the Defendants' failure to protect the Plaintiff's First Amendment rights. Plaintiff's allegations support a legal theory that

- 9 -

1  because of the Rankin-letter Defendants knew or should have known that by authorizing
2  exclusive use permits, pursuant to the challenged ordinances, they were violating First
3  Amendment rights, and therefore, continuing to use and authorize exclusive use permits
4  pursuant to the ordinances, the Defendants failed to act to protect Plaintiff's First
5  Amendment rights. The Court finds the Plaintiff has alleged a facial challenge to the City
6  ordinances under the First Amendment in Count One.

## B. Count Two: First Amendment Retaliation

"Political speech lies at the core of First Amendment protections." *Kaplan v. Cnty of Los Angeles,* 894 F.2d 1076, 1079 (9th Cir. 1990). In other words, the First Amendment forbids government officials from retaliating against individuals for speaking out. *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006)); *see also Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir.1986). To state a prima facie case for recovery under § 1983 for retaliation based on the First Amendment, a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Blair,* 608 F.3d at 543 (citing *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 770 (9th Cir.2006)).

More recently the Ninth Circuit has held: "To demonstrate retaliation in violation of the First Amendment, [Plaintiff] must ultimately prove first that [Defendants] took action that would chill or silence a person of ordinary firmness from future First Amendment activities.... The second requirement is [that] ... [Plaintiff] must ultimately prove that [Defendants'] desire to cause the chilling effect was a but-for cause of [Defendants'] action. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900-01 (9th Cir. 2008). Intent to inhibit speech can be demonstrated either through direct or circumstantial evidence. *Picray v. Duffitt,* 2014 WL 715519 * 7 (Or. Feb. 24, 2014) (citing *Mendocino Envtl. Ctr. V. Mendocino Cty.,* 192 F.3d 1283, 1300-1301 (9th Cir.

- 10 -

1999)).

In this case, Plaintiff has alleged that Defendants targeted him and used police authority to exclude him from an event in a public space intending to prevent him from engaging in protected political speech, and that Defendants did so because he had engaged in political speech criticizing the City. Specifically, Plaintiff alleges: (1) as publisher of Common Sense II and as a political activist, he has criticized Tucson City Officials for having an open-border policy and engaging in cronyism, (FAC (Doc. 6) ¶¶ 21, 22); 2) he sought to engage in anti-immigration political speech at Armory Park on May 1st, 2012, *id.* ¶ 30); (3) that Defendants targeted Plaintiff to prevent his entry into Armory Park on May 1st, 2012, *id.* ¶28), to prevent him from exercising his First Amendment right to speak, *id.*, Count 1, and (4) that Defendants' action was directly in response to Plaintiff's past political speech about the Defendants, *id.* ¶ 34.

These factual allegations are enough to support the First Amendment retaliation claim in Count Two as follows: 1) Plaintiff alleged he engaged in constitutionally protected activity, i.e., he engaged in political speech criticizing the City; (2) as a result, he was subjected to adverse action by the defendant, i.e., he was barred from the May 1st Coalition rally and precluded from engaging in anti-immigration political speech, and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action, i.e., the Defendants barred him from the rally in order to prevent him from engaging in political speech.

### C. Count Three: Conspiracy

Defendants argue that in order to state a claim for conspiracy under §1985, "a complaint must allege that the defendants did (1) 'conspire ...' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of (the) conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a

citizen of the United States.'" (MD (Doc. 13) at 11) (quoting *Cuviello v. City and Cnty of San Francisco*, 940 F. Supp. 2d 1071, 1098 (N.D. Cal. 2013) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971) (quoting 42 U.S.C. § 1985(3)). "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* (quoting *Griffin,* 403 U.S. at 102). Defendant asserts that Plaintiff does not allege any racial or class based discrimination

In a § 1983 conspiracy claim, the plaintiff must show that the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds, in an unlawful arrangement violating the plaintiff's civil rights. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy. A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions. *Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir.1999).

Allegations of conspiracy must still meet the *Iqbal* pleading standard, which requires "'defin[ing] the scope of any conspiracy ..., what role [a conspirator] had, or when or how the conspiracy operated.'" (MD (Doc. 13) at 11 (quoting *Lacey v. Maricopa Cnty*, 693 F.3d 896, 937 (9th Cir. 2012) (en banc)), *see also Cuviello*, 940 F. Supp. 2d at 1098.

Here, Plaintiff alleges that sometime prior to May 1st, 2012, the City and Police Defendants met with members of Defendant the May 1st Coalition and formulated a plan to deny Plaintiff entry into Armory Park on May 1, 2012. (FAC (Doc. 6) ¶ 28.) Plaintiff alleges that City and Police Defendants, including McCarthy, Sayre and Lopez, met in the morning on May 1st, 2012, at a "command briefing" and formulated a plan to violate Plaintiff's First Amendment Rights on that date. (FAC (Doc. 6) ¶29). Plaintiff alleges that on May 1st, 2012, Defendants McCarthy, Sayre and Lopez acted pursuant to

directives formulated at the "command briefing" and with members of Defendant May 1st Coalition acted to unlawfully prevent Plaintiff from entering Armory Park where he sought to exercise his First Amendment right to political speech. (FAC (Doc. 6) ¶¶ 29-30).

Plaintiff has named the conspirators as City and Police officials, who met prior to May 1st 2012, and those who attended the "command briefing" on the morning of May 1, 2012, and Defendant TPD officers McCarthy, Sayre and Lopez and unnamed members of Defendant, the May 1st Coalition. He alleges that they reached a common understanding with the unified purpose being the unlawful arrangement to prevent his entry to Armory Park on May 1, 2012. It is undisputed that the speech these Defendants allegedly conspired to preclude was race based anti-immigration political speech.

In deciding whether to dismiss a claim under Rule (12)(b)(6) the Court is generally limited to reviewing only the complaint, but may review materials which are properly submitted as part of the complaint and may take judicial notice of records outside the pleadings. *See Campanelli .v Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). Where facts are raised for the first time in opposition papers, the Court should consider whether to grant leave to amend or to dismiss the complaint with or without prejudice. *Broam v. Bogan*, 320 F.3d 1023, 1026 (9th Cir. 2003).

Plaintiff argues that there are relevant documents beyond his FAC which support his claim that Defendants conspired to issue an unlawful exclusive use permit to deny Plaintiff his First Amendment rights. (Resp. (Doc. 22) at 15, ¶35, Ex. 3, 4). Plaintiff submits a document which reflects he was explicitly named in the exclusive use permit request. *Id.*, Ex. 3. Plaintiff argues that the procedures outlined with the issuance of the exclusive use permit was: first, permittees ask individuals to leave and second, they may contact TPD if their request is refused. *Id.*, Ex. 4. Plaintiff argues that in his case, Defendants acted contrary to these stated procedures because TPD officers were already on the scene to deny him access to the rally prior to his exercising his First Amendment

1 rights. *Id.* at 15-16, ¶¶ 37, 38.  With the addition of these allegations, the Plaintiff can
2 plead enough facts to raise a reasonable expectation that discovery may reveal evidence
3 to support his allegations of conspiracy.  The Court grants Plaintiff leave to amend his
4 complaint to allege these additional facts in support of Count Three.
5  In their Reply Defendants move to strike Plaintiff's exhibits 2, 3, 4 and 5 as not
6 relevant.  The Court finds exhibits 3 and 4 support the amendment of the FAC to state the
7 conspiracy claim.   Exhibits 3 and 4 are the Exclusive Use Permit Request and the
8 Issuance of Exclusive Use Permit from the May 1, 2010 event, not the 2012 event which
9 is the subject of Plaintiff's law suit.  At this juncture of the case, pre-discovery, the Court
10 assumes the 2012 permit was similarly requested, issued, and enforced.  Defendants do
11 not assert otherwise. Therefore, these documents are relevant.  The Court has not relied
12 on documents 2 and 5.

### D. Dismissal of Renee Ochoa

14 Defendants seek to dismiss Defendant Renee Ochoa based on insufficiency of
15 service of process. (MD (Doc. 13) at 13 (citing Fed.R.Civ.P. 12(b)(5)).  Defendants argue
16 that Plaintiff failed to comport with the requirements of Fed.R.Civ.P 4(e)(2) when he
17 served the Tucson City Clerk on August 14, 2014, with a copy of the FAC intended for
18 Ochoa.  At that time Renee Ochoa was not an employee with the City of Tucson.
19 Defendants argue that to satisfy sufficiency of process Plaintiff must serve Ochoa in
20 person, at Ochoa's home, or through an authorized agent.  Plaintiff argues that he
21 believed Ochoa was properly served when the Tucson City Clerk carefully read the
22 documents and accepted service for all Defendants.  (Response (Doc. 22) ¶ 47-51).
23 Plaintiff has provided good cause for his misunderstanding regarding the sufficiency of
24 service on Ochoa, and he requests an extension to properly serve Ochoa.  (Response
25 (Doc. 22) ¶51, at 22).  The Court grants Plaintiff a 30 day extension to serve Defendant
26 Renee Ochoa.
27 **Accordingly,**
28 **IT IS ORDERED** that the Defendants' Motion to Dismiss (Doc. 13) is DENIED.

1 **IT IS FURTHER ORDERED** that Plaintiff has 20 days from the filing date of this Order to file a Second Amended Complaint for the sole purpose of adding the alleged violation of TCC 21-3(7)(4) and allegations related to Count III, Conspiracy, reflected in Exhibits 3 and 4 to Plaintiff's Objection to the Motion to Dismiss.

**IT IS FURTHER ORDERED** that Plaintiff shall have 30 days to serve Defendant Ochoa or Defendant Ochoa shall be dismissed from this case.

**IT IS FURTHER ORDERED** that Defendant Villasenor is dismissed from the case.

Dated this 7th day of August, 2015.

David C. Bury
United States District Judge